## WELCOME JEPHERSON *vs.* WARREN HUNT.

If a land-owner, whose land has been taken for the construction of a railroad, and wno has presented a petition to the county commissioners for his damages therefor, has afterwards fixed by a written agreement with the railroad company the sum to be assessed on his petition, with a provision that, if satisfactory to the commissioners, this sum may be entered upon their records, without a view, and other proceedings had thereon as if there had been a view, an oral promise, for a sufficient consideration, by a third person to pay to him the interest on that sum until the circumstances of the railroad company shall enable them to pay the amount, is not within the statute of frauds, if in fact the sum so fixed had not been adopted or acted on by the commissioners, and the promise is made with knowledge of that fact.

An agreement by a third person to pay to a land-owner interest on a sum which has been fixed by him and a railroad company as damages for his land taken for the construction of the railroad, "if said railroad should be kept in operation," is to be construed with reference to the circumstances which surrounded the parties at the time it was made; and if these indicate that the object of the promisor was to secure the beneficial operation of the road, by running passenger and freight trains over the same for the reasonable accommodation of himself and others for whom he acted, that construction should be given to the language used by him; and an instruction to the jury that, if the railroad claimed the right to exercise their franchise, and run a freight train over their road occasionally, this would be a sufficient compliance with the condition, is erroneous.

CONTRACT to recover interest, amounting to $18.97, from January 1, 1858, on the agreed value of damages to the plaintiff's

---

land taken by the Southbridge and Blackstone Railroad Com
pany.

The first count set forth the taking of the land, and that after-
wards the defendant executed to him and others a writing, which
is copied in the margin, marked (A), and that he assented to the
same, and that the damages to him were fixed at $150, and that
the railroad had been kept in operation, and the defendant had
paid the interest on that amount up to January 1, 1858, and
had refused to pay it since, though requested. The second count
was for $18.97, money had and received; and the third count
alleged substantially the same facts stated in the first count,
with an averment that the defendant's promise was made in
consideration that the plaintiff would forbear from pursuing his
legal remedy against the railroad company for his land dam-
ages. The answer contained general denials of the facts charged
in the declaration.

At the trial in the superior court, before *Morton*, J., the
plaintiff introduced in evidence the writing above referred to,

---

(A) PROPOSITION. — I propose to arrange the land damage occasioned by the
construction of the Southbridge and Blackstone Railroad in the following manner,
to wit: The amount to each owner for land actually taken shall be the same per
acre as may have been agreed or otherwise decided upon, or as is specified in
their bond to the railroad company, if one was given; if not, then the owner to
have the same sum allowed per acre paid others for similar land. Then by agree-
ment of the parties, to wit, the land-owners and the proper officers of the railroad
company, the matter of land damage shall be presented to the county commis-
sioners for their confirmation, in order that the same may not become outlawed
in that behalf. Upon each sum so fixed, the interest from the first day of April
1853 to the first day of January 1856 shall be added, and upon this sum I prom-
ise to pay to each individual land-owner or his order, at my counting-room in East
Douglas, on the first day of April next, the interest for the first quarter, to wit,
from January 1st 1856 to April 1st 1856; therefore I promise to pay, at my
counting-room aforesaid, the interest quarterly, if said railroad should be kept in
operation, and until the circumstances of the railroad shall warrant a different
arrangement, or shall enable the company to satisfy said claimants for their de-
mands in this matter. (The rest of the agreement is immaterial.)

Attest: Edwin Moore.                                    Warren Hunt.
East Douglas, January 30th, 1856.

(A), with the conditional acceptance thereon, marked (B), and the judge ruled that these did not constitute a contract. The plaintiff then called one Cook as a witness, who testified that he was employed as an agent by the plaintiff and other land-owners to obtain their land damages from the railroad company; that he was also employed by the defendant to obtain the assent of the land-owners to the proposition contained in the writing (A), and that he and the defendant, and E. D. Ammidown, an officer of the railroad, who was admitted to be duly authorized for that purpose, met together, and it was then agreed in the defendant's presence that the plaintiff's damages should be estimated at $150, and a paper, which is copied in the margin, marked (C), was drawn up, signed by Ammidown,

---

(B) We the undersigned, land-holders in the matter aforesaid, accept of the above proposition, provided said railroad company agree to pay us the amount of damage set against our names respectively, and the commissioners shall adjust the same as their own judgment, and enter up their order accordingly, with the usual proper order that the company shall give security, &c., so that the land-owners shall have the same remedy as if the proceedings were in usual form.

Welcome Jepherson, $150, (and fourteen others.)

(C) Whereas certain petitions against the Boston and New York Central Railroad Company for assessment of damages are now pending before the county commissioners for the county of Worcester, upon which appear the names of land-owners whose lands are alleged to have been taken, &c.; now we the undersigned, whose names are signed to the said petitions, and I, Ebenezer D. Ammidown, a committee of the Boston and New York Central Railroad Company, duly appointed therefor, hereby agree that the prayer of said petitions be granted, and decrees, orders, &c., passed and entered in pursuance thereof.

And we further agree that the sums to be assessed in favor of the parties to said petitions shall be as follows:     Welcome Jepherson of Uxbridge, $150.

(The assessments for the fourteen other land-owners were here given.)

And we further agree that, if satisfactory to the county commissioners, the assessments may be made and entered upon the records of the court without a view of the premises, and the other proceedings had in the same manner and with the same effect as though a view had been had, all the expenses of the proceedings to be paid by said railroad company.

Boston & New York Central R. Road Co.,

By E. D. Ammidown, Committee duly authorized.

Witness to E. D. Ammidown's signature: Warren Hunt.

Welcome Jepherson, (and fourteen others.)

March 31st 1856.

and witnessed by the defendant; that at this time the paper (A) was produced and referred to, and it then bore upon it the acceptance (B), signed by various land-owners, but was not signed by the plaintiff till afterwards; that this paper, (C), was afterwards presented to the county commissioners, but no decree was obtained thereon, and that he informed the plaintiff and defendant that no decree had been obtained thereon, and they both assented thereto. After all the above transactions, the interest on $150 was paid for two years to the plaintiff by the defendant's directions. The claim of the plaintiff and ruling of the judge upon these facts are stated in the opinion.

Upon facts not stated in the bill of exceptions, the defendant contended that the true construction of that clause of his proposition relating to keeping the railroad in operation was, that it should be kept in operation substantially as it was at the date thereof, namely, by running passenger and freight trains over the same in the usual manner; but the judge ruled that if the railroad company claimed the right to exercise their franchise, and did run even a freight train over their road occasionally, this would be a sufficient compliance with the condition referred to.

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*P. E. Aldrich*, for the defendant, cited *Kirkham* v. *Marter*, 2 B. & Ald. 613; *Turner* v. *Hubbell*, 2 Day, 457; *Emmet* v. *Dewhirst*, 8 Eng. Law & Eq. 83; *Curtis* v. *Brown*, 5 Cush. 491; *Hilton* v *Dinsmore*, 21 Maine, 410.

*G. F. Hoar*, for the plaintiff.

BIGELOW, C. J. We are of opinion that the agreement of the defendant to pay interest on the amount of damages stipulated to be due from the Southbridge and Blackstone Railroad Company was an original and not a collateral undertaking, and does not come within the statute of frauds as being a promise to answer for the debt, default or misdoings of another person. Gen. Sts. *c.* 105, § 1, *cl.* 2. Assuming that the papers marked (A) and (B) did not amount to a binding contract, we are to look into the evidence to ascertain what was the agreement

which the parties subsequently entered into. This is stated in substance in the position taken by the plaintiff at the trial, which was adopted by the court in the instructions given to the jury. It was that the damages sustained by the plaintiff, by the taking of his land for the construction of the railroad, were fixed by a valid agreement between the corporation and the plaintiff at the sum of one hundred and fifty dollars ; and that after this agreement was made the defendant orally agreed that he would pay interest on said sum according to the written stipulation contained in paper (A), waiving the condition in relation to the proposed decree of the commissioners inserted in paper (B). At the time the defendant entered into this agreement, there was no interest due and payable to the plaintiff from the railroad corporation, either as matter of contract, or as damages resulting from the withholding a sum of money which was justly owing to the plaintiff. The parties interested — the plaintiff and the railroad corporation — had then agreed that the amount of damages to be paid for the land taken by the latter should be assessed at the gross sum of one hundred and fifty dollars, and that this amount should be awarded to the plaintiff by the commissioners in like manner and to the same effect as if the damages had been ascertained and adjudged by them according to the provisions of law. This was the substance and effect of the agreement of March 31, 1856, between the plaintiff and the railroad corporation, on which the oral agreement of the defendant to pay interest, as stipulated by paper marked (A,) was based. There was no stipulation for the payment of interest by the corporation. If the parties intended that the sum of one hundred and fifty dollars should bear interest during the interval which must necessarily elapse between the date of the agreement and the award of the commissioners, which was to be made in pursuance of its stipulations, it would have been the subject of a distinct promise. But none such was inserted. Nor was there any legal liability for interest until the contemplated award was made by the county commissioners. *St.* 1849, *c.* 124. The liability of the corporation to the plaintiff for damages was fixed at a specific sum, which was to be the amount which the

commissioners were to award, according to the agreement of March 31, 1856. No addition of interest could therefore be made to it, until after the commissioners had made their award. Clearly then the plaintiff could claim no interest of the corporation on the ground that they had neglected to pay money which was due to him. The damages which he had agreed to take were not payable, until the commissioners had made their award. In this respect, they were placed by the agreement of the plaintiff and corporation on the same footing as they would have stood, if no stipulation concerning the amount had been made, and they had been ascertained and assessed by the commissioners in the usual manner under the provisions of the statutes. They would bear interest only from the time when the award was made. Nor can it be contended that the plaintiff was entitled to interest by reason of any omission to apply to the commissioners for the entry of the award of damages according to the agreement. On the contrary, it is expressly found that the plaintiff and defendant both assented to the delay in obtaining the adjudication of the commissioners. On these facts it cannot be contended that the promise of the defendant is within the statute of frauds. It was not an agreement to pay the debt of another, because no interest was owing from the railroad corporation to this plaintiff; nor to answer for the default or misdoings of a third person, because the corporation could be guilty of no neglect or omission by which they would be liable for interest until after an award of damages by the commissioners. The same result would follow, on the supposition that the oral agreement by the defendant to pay interest was made before the execution of the agreement between the plaintiff and the corporation, if it was based, as the negotiations between the parties seem to show, on the understanding that the damages sustained by the plaintiff were to be fixed at a specific sum by a stipulation between himself and the corporation. The case therefore is the ordinary one, of a promise by a party to pay a sum of money to another on a valid consideration.

We assume that the consideration was sufficient to support

a promise, because no point seems to have been made at the
trial in relation to the validity of the consideration, nor is the
evidence bearing upon it stated in the exceptions.    But if it be
true that the plaintiff agreed to forbear prosecuting his claim
against the corporation for damages for a certain period of time
in consideration of a direct benefit which would thereby accrue
to the promisor, the agreement of the defendant would be taken
out of the statute on another ground.    The rule is well settled,
that when the leading object of a promisor is to induce a prom-
isee to forego some lien, interest or advantage, and thereby to
confer on the promisor a privilege or benefit which he would not
otherwise possess or enjoy, an agreement made under such cir-
cumstances, and upon such a consideration, is a new, original
and binding contract, although the effect of it may be to assume
the debt and discharge the liability of another.    *Nelson* v. *Boyn-
ton*, 3 Met. 402.    *Alger* v. *Scoville*, 1 Gray, 391, 395.    *Wood* v.
*Corcoran*, 1 Allen, 405.    The application of this principle to the
case at bar would take the agreement of the defendant out of
the operation of the statute, although the corporation might
have been liable to the plaintiff for the payment of interest, if
the evidence shows that the contract was made on a new and
original consideration of benefit to the defendant.

The only other question raised by the exceptions relates to
the construction which the court gave to that clause in the con-
tract, by which the payment of interest by the defendant to the
plaintiff was made to depend on the condition, that the railroad
should " be kept in operation."    These words, we think, should
be interpreted with reference to the subject matter of the con
tract, the circumstances which surrounded the parties at the
time it was entered into, and especially in view of the interest
which the defendant and those for whom he acted had in se-
curing the construction of the railroad and obtaining facilities
thereby for transporting passengers and merchandise.    Construed
in this way, it is clear that these words were not used in a loose
or popular sense, as signifying that the interest was to be paid so
long as the road was not disused or abandoned, nor as relating
solely to the nature or extent of the franchise, which the railroad

had acquired, in the plaintiff's land; but that they were intended by the parties as stipulating for the payment of the interest, while the road was beneficially operated for the reasonable accommodation of the plaintiff and those for whom he acted in negotiating the contract. In this particular, we are of opinion that the ruling of the court was erroneous, and on this ground the entry must be          *Exceptions sustained.*